OPINION OF THE COURT
Graffeo, J.
In November 1994, plaintiff Steve Pierre was injured when his vehicle was struck by a tractor-trailer driven by Steve Harris. Harris’ employer, Preston Conquest, owned the tractor cab but the trailer was owned by Blue Hen Lines, a federally-registered motor carrier engaged in the business of transporting goods in interstate commerce. Conquest had leased the tractor to Blue Hen and agreed to provide Blue Hen with a driver. In turn, the lease obligated Blue Hen to obtain liability insurance coverage for any personal injury and property damage that might arise as a result of operation of the tractor-trailer. It is undisputed that Harris was operating the vehicle in the course of Blue Hen’s business when the collision occurred.
Blue Hen purchased a liability policy, which was in effect on the day of the accident, from defendant Providence Washington Insurance Company. As a condition precedent to coverage, a *225 notice of accident provision in the policy required that an insured promptly notify the insurance carrier of any accident arising from operation of the vehicle. The parties agree that Harris and Conquest met the policy’s definition of an “insured.”
In June 1995, plaintiff sued Harris and Conquest, respectively the driver and owner of the tractor, obtaining a default judgment against them. After an inquest, a judgment for compensatory damages was entered in the amount of $227,560. In the course of litigation, plaintiff learned that Blue Hen owned the trailer and that Providence had issued a trucker’s liability policy to Blue Hen to cover losses from motor vehicle accidents occurring in the course of Blue Hen’s business.[1] Plaintiff forwarded the judgment to Providence and requested payment under Blue Hen’s policy. Providence immediately disclaimed coverage on the ground that Harris and Conquest breached the notice of accident condition in the policy by failing to timely inform Providence of the accident involving Pierre. The disclaimer letter did not refer to plaintiff’s failure to obtain a judgment against Blue Hen as a basis for denying coverage.
Plaintiff commenced this action against Providence in October 1997 seeking payment of the judgment. After discovery, Providence moved for summary judgment dismissing the complaint on the ground that the failure of Harris and Conquest to timely notify it of the accident absolved the company of liability.
Plaintiff cross-moved for summary judgment, relying on the terms of a federally-mandated policy endorsement, known as the MCS-90, attached to liability policies issued to motor carriers who transport goods in interstate commerce. Plaintiff noted that, under federal law, motor carriers must register with the federal government and demonstrate that they have secured adequate financial resources to pay judgments arising from accidents occurring in the course of their transport business, ordinarily accomplished through purchase of a liability insurance policy with the MCS-90 endorsement.
As required by federal regulation (see 49 CFR 387.15), the MCS-90 endorsement provides that the insurance carrier *226 agrees to pay any final judgment “recovered against the insured for public liability,” as a result of the negligent operation of any vehicle, regardless of whether the vehicle is specifically described in the policy and despite the insured’s failure to comply with policy conditions. In effect, the endorsement shifts the risk of loss for accidents occurring in the course of interstate commerce away from the public by guaranteeing that an injured party will be compensated even if the insurance carrier has a valid defense based on a condition in the policy. The burden is then on the insurer to pursue indemnification from other parties if coverage was not warranted under the terms of the underlying policy. In this case, plaintiff argued that the MCS-90 endorsement, which was required to be included in the liability policy Providence issued to Blue Hen, obviated the effect of the notice of accident condition in the policy, at least insofar as it obligated the insurance company to compensate plaintiff, the injured party.
In response to plaintiffs cross motion, defendant claimed that an MCS-90 endorsement was not part of the insurance policy issued to Blue Hen. Although Providence had filed a certificate of insurance with the Interstate Commerce Commission certifying that it had included the endorsement and provided Blue Hen the coverage mandated by federal law, it initially asserted in Supreme Court that the MCS-90 endorsement was not part of the policy (a position it subsequently abandoned). In addition, Providence argued that even if the endorsement was read into the policy, it would not provide a basis for plaintiff to recover because plaintiffs judgment was against Harris and Conquest rather than Blue Hen, the named insured.
Supreme Court denied Providence’s motion for summary judgment and granted plaintiffs cross motion, holding that Providence was obligated to pay the judgment. Concluding that the federal security requirement had to be read into the policy, the court reasoned that the MCS-90 endorsement eliminated the prompt notice condition as a defense in a claim brought by an injured party. The court found that plaintiff could recover, notwithstanding his failure to obtain a judgment against Blue Hen, because Harris and Conquest met the policy’s definition of an “insured” and the insurer was required under the endorsement to pay any final judgment “recovered against the insured.”
Providence appealed and the Appellate Division affirmed, with one Justice dissenting. The Court echoed Supreme Court’s *227 rationale and emphasized that the result was consistent with the public policy considerations underlying the MCS-90 endorsement requirement: to provide a safety net to members of the public injured as a result of negligent operation of tractor-trailers used in interstate commerce. Rather than applying the insurance policy’s definition of “insured,” the dissenting Justice would have relied on a definition that appears in the federal regulations, which he interpreted as more restrictive than the policy definition. The Appellate Division granted Providence leave to appeal to this Court and we now affirm.
Before we interpret the MCS-90 endorsement, it is helpful to consider the purpose of the federal statutory and regulatory scheme governing the interstate trucking industry. Congress passed the Motor Carrier Act of 1980 to update federal regulation of the national motor carrier industry “to reflect the transportation needs and realities of the 1980’s” (Pub L 96-296 § 3 [a]). The legislation was, in part, intended to address abuses that had arisen in the industry which threatened public safety, including the use by motor carriers of leased or borrowed vehicles to avoid financial responsibility for accidents that occurred while goods were being transported in interstate commerce (Empire Fire & Mar. Ins. Co. v Guaranty Natl. Ins. Co., 868 F2d 357, 362 [10th Cir 1989]).
The legislation imposed a “[[liability insurance requirement” upon each motor carrier registered to engage in interstate commerce which mandated that a motor carrier file “a bond, insurance policy, or other type of security” in an amount determined by the Secretary of Transportation and the laws of the state or states in which the motor carrier intended to operate (49 USC § 13906 [a] [1]; see also former 49 USC § 10927 [a] [1]). The security must be sufficient to cover “each final judgment against the registrant for bodily injury to, or death of, an individual resulting from the negligent operation, maintenance, or use of motor vehicles, or for loss or damage to property” (49 USC § 13906 [a] [1]; see also former 49 USC § 10927 [a] [1]). Congress further provided that “[flinancial responsibility may be established under this section by any one or any combination of the following methods acceptable to the Secretary: evidence of insurance, guarantee, surety bond, or qualification as a self-insurer” and authorized the Department to “establish, by regulation, methods and procedures to assure compliance with this section” (Pub L 96-296 § 30 [c]).
With the oversight of the Interstate Commerce Commission, the Federal Department of Transportation promulgated regula *228 tions implementing the financial security requirements set forth in section 30 of the legislation, which were intended “to create additional incentives to motor carriers to maintain and operate their vehicles in a safe manner and to assure that motor carriers maintain an appropriate level of financial responsibility for motor vehicles operated on public highways” (49 CFR 387.1). The Department determined that the “legislative history of Section 30 indicates a congressional belief that increased financial responsibility will lead to improved safety performance as unsafe motor carriers will incur higher premiums than safe carriers, or will be unable to obtain coverage” (46 Fed Reg 30974 [1981]). To this end, the Department concluded that section 30 was “a remedial legislative measure * * * [that] should be interpreted broadly” (46 Fed Reg 30974, 30977).
In particular, the Department promulgated a motor carrier endorsement form known as the MCS-90 (see 49 CFR 387.15).[2] The endorsement was to be attached to the trucker’s liability policy issued to a motor carrier “for the purpose of providing notice to the general public that all criteria of Section 30 [the financial security requirements] have been met” (46 Fed Reg 30974, 30978). The endorsement reads, in relevant part:
“In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. * * * It is understood and agreed that no condition, provision, stipulation, or limitation contained *229 in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured” (49 CFR 387.15).[3]
The endorsement also states that any policy conditions or limitations remain in effect as between the insured and the insurance carrier and the carrier may obtain reimbursement from the insured for any payment the carrier would not have been obligated to make absent the endorsement.[4]
*230 In this case, Providence now concedes that the MCS-90 endorsement must be read into the liability policy as if it had been attached when Providence issued the policy to Blue Hen. The parties also agree that the endorsement modifies the terms of the policy by excusing any conditions or limitations, including the notice of accident condition on which Providence disclaimed. It is further undisputed that Blue Hen agreed in its lease agreement with Conquest to provide liability coverage for the use of the tractor-trailer in Blue Hen’s business and that this motor vehicle accident occurred in the course of Blue Hen’s business.[5] Indeed, this is precisely the type of risk Providence agreed to cover when it issued the trucker’s liability policy to Blue Hen.[6]
The parties disagree, however, on what the injured party must do to be entitled to the expanded protection afforded by the MCS-90 endorsement. The controversy focuses on the meaning of the phrase “any final judgment recovered against the insured” in the MCS-90 endorsement.
Plaintiff notes that the term “insured” is not defined in the endorsement and argues as a result that the court must look to the definition of that term in the body of the policy. Because Harris and Conquest fall within the policy definition of insured, plaintiff contends the final judgment against them constituted the requisite “final judgment recovered against the insured” referenced in the MCS-90 endorsement. Providence argues that the endorsement must be viewed as distinct from the underlying policy and that its enhanced protections are triggered only if the injured party obtains a judgment against the named insured who purchased the policy, in this case Blue Hen. Notwithstanding the definition of “insured” in the policy, Providence contends that same term has a separate meaning under the endorsement, which can be discerned only by refer *231 ence to other financial security regulations. We agree with plaintiff.
The MCS-90 endorsement, a creature of federal regulation, must be interpreted according to federal law. Federal courts that have interpreted the endorsement in the context of claims brought by injured parties have consistently focused on the literal language of the endorsement and the underlying policy to determine its meaning (see Integral Ins. Co. v Lawrence Fulbright Trucking, Inc., 930 F2d 258 [2d Cir 1991]). Appellate courts have also consistently held that an insurance company may be obligated to compensate an injured party under an MCS-90 endorsement even if the motor carrier who purchased the underlying policy was not the negligent party responsible for causing the injuries (id.; see also John Deere Ins. Co. v Nueva, 229 F3d 853 [9th Cir 2000], cert denied 534 US 1127 [2002]; Campbell v Bartlett, 975 F2d 1569 [10th Cir 1992]; Lynch v Yob, 95 Ohio St 3d 441, 768 NE2d 1158, cert denied sub nom. National Union Fire Ins. Co. of Pittsburgh v Lynch, — US —, 123 S Ct 695 [2002]). In other words, the motor carrier who purchased the insurance — the so-called “named insured”— need not have been negligent; all that is required is that the accident resulted from negligence and that a judgment was entered implicating the coverage provisions of the policy and endorsement.
Three federal cases are particularly helpful in resolving the issue before us. In each case, an insurance company was obligated to compensate an injured party under an MCS-90 endorsement even though the judgment in the personal injury action was not obtained against the named insured.
In John Deere Ins. Co. v Nueva (229 F3d 853), Nueva, a bus driver, suffered personal injuries when his bus collided with a tractor-trailer driven by Carcha. The tractor was owned by a company (Blue Star) and an individual, both uninsured. The trailer was owned by Sahota, the named insured in a trucker’s liability policy issued by John Deere Insurance Company. Prior to the accident, Sahota had agreed to sell the trailer to Blue Star but title had not yet been transferred; the trailer was being operated by Blue Star in the course of its business when Nueva was injured. Nueva sought to recover under the MCS-90 endorsement to Sahota’s liability policy. John Deere sought a declaratory judgment that it had no duty to indemnify Sahota, Carcha or Blue Star because the trailer was not among the covered vehicles listed in the policy. The District Court granted John Deere summary judgment but the United States Court of *232 Appeals for the Ninth Circuit reversed and held that Nueva could recover under the endorsement.
The Ninth Circuit’s analysis turned on the definition of “insured” in Sahota’s liability policy. As permissive users of a vehicle not listed in the policy’s schedule of covered vehicles, Garcha and Blue Star did not meet the policy definition of insured. However, noting that the MCS-90 endorsement states that the insurer agrees to pay “regardless of whether or not each motor vehicle is specifically described in the policy,” the court concluded that the endorsement negated the policy limitation which restricted coverage to accidents involving covered vehicles, thereby expanding the policy’s definition of an insured to encompass Garcha and Blue Star. The Ninth Circuit rejected John Deere’s argument that the use of the word “insured” in the endorsement referred only to Sahota, the named insured, ultimately holding that John Deere was obligated to compensate Nueva under the policy “for any judgment against Garcha and Blue Star up to the policy maximum” (John Deere Ins. Co. v Nueva, 229 F3d at 860).
Adams v Royal Indem. Co. (99 F3d 964 [10th Cir 1996]) also involved an action brought by an injured party seeking to recover under an MCS-90 endorsement. The underlying personal injury judgment was entered against the driver of the tractor-trailer rather than the named insured — the motor carrier that leased the vehicle and purchased the trucker’s liability policy. The Court of Appeals for the Tenth Circuit held that the motor carrier’s policy could be used to pay the judgment obtained against the driver of the truck, who was using the vehicle with the motor carrier’s permission at the time of the accident, even though the truck was not listed as a covered vehicle in the policy. As in John Deere, the driver did not fall within the policy definition of an insured but the court determined that the MCS-90 endorsement modified and expanded the policy definition, thereby bringing the driver within the ambit of the policy and rendering the insurance company liable for payment of the judgment.
In another Tenth Circuit case, Campbell v Bartlett (975 F2d 1569), the injured party secured a judgment against the trucking company that bought the liability policy and its driver employee, who had caused the accident by driving under the influence of alcohol. In addition to a compensatory damages judgment entered against the company and the driver, a punitive damages judgment was entered against the driver alone. The Tenth Circuit held that the insurance carrier was required *233 to satisfy both portions of the judgment, even though the punitive damages award had not been assessed against the named insured. The court concluded that the dispositive issue was whether the driver was an insured within the terms of the MCS-90 endorsement. Noting that the endorsement itself does not define who is an insured, the court interpreted the term using the definition in the liability policy. Because the driver, a permissive user of a covered vehicle, met the policy definition of an insured, the insurance carrier was responsible for payment of the judgment.
The pivotal factor in these cases was not which party the personal injury judgment was entered against; instead, the focus was on the coverage provisions of the liability policies to which the MCS-90 endorsements were attached. In cases where the party responsible for the accident fell within the policy definition of an insured (as in Campbell) or was insured under the policy coverage provisions as specifically modified by the MCS-90 endorsement (as in John Deere and Adams), the injured party was entitled to payment under the endorsement, regardless of whether the responsible party happened to have been the named insured who purchased the policy. This is the only result consistent with the public policy underpinnings of the endorsement: shifting the risk of loss in motor vehicle accidents involving tractor-trailers operated in interstate commerce by guaranteeing that an injured party will be compensated even if a condition in the liability policy would otherwise provide the insurance carrier with a valid defense.[7]
*234 The same result should obtain in this case. Indeed, plaintiffs claim is even stronger than that of the injured parties in John Deere and Adams because it is undisputed that Harris and Conquest meet the policy’s definition of an insured.[8] Providence disclaimed coverage based solely on the alleged failure of the defendants named in the judgment to meet the notice of accident condition in the policy. This condition is specifically negated in the MCS-90 endorsement insofar as payment to the injured party is concerned. Accordingly, because Providence is obligated under the endorsement to pay “any final judgment recovered against the insured,” plaintiff was entitled to summary judgment directing Providence to pay the judgment against Harris and Conquest, its insureds.[9]
We reject Providence’s contention that the MCS-90 endorsement should not be treated as a part of the underlying trucker’s liability policy but should be viewed as imposing conditions distinct from those contained in the policy.[10] First, we note that we are bound to interpret the endorsement ac *235 cording to federal law and none of the federal courts which have determined claims brought by injured parties under the MCS-90 endorsement have adopted this approach. Rather, in each case, the courts have interpreted the endorsement by reference to the policy to which it is attached. Second, by its literal language, the endorsement simply does not provide separate coverage. Like most endorsements to insurance policies, it explicitly cross-references and incorporates several of the terms of the policy.
Most significantly, the endorsement delineates circumstances when .the insurance carrier must compensate an injured party even if the policy purports to absolve the insurer of responsibility. Had the drafters intended to use the endorsement to create contractual obligations distinct from those in the policy, they would have included separate provisions in the endorsement defining coverage, rather than merely negating exceptions included in the policy. Under Providence’s view of the endorsement, a party insured under the policy might not be covered under the endorsement. We see nothing in the language of the endorsement indicating that coverage is being contracted in this manner; to the contrary, by its plain terms the endorsement unreservedly eliminates any conditions or limitations in the policy for purposes of compensating an injured party.
*236 The dissenting Justice at the Appellate Division focused on definitions included elsewhere in the financial security regulations in concluding that the term insured as used in the endorsement has a different, more narrow meaning than the definition provided in the policy.[11] This approach is inconsistent with the analysis of the federal courts and does not effectuate the policy considerations underlying the financial security requirements. In addition, the definitions relied on are themselves susceptible of multiple interpretations. Elsewhere in the financial security regulations the terms “insured and principal” are defined as “the motor carrier named in the policy of insurance, surety bond, endorsement, or notice of cancellation, and also the fiduciary of such motor carrier” (49 CFR 387.5). Using this definition to interpret the term “insured,” the Appellate Division dissenter concluded the endorsement provided expanded coverage only when there was a final judgment against the motor carrier named in the policy of insurance, in this case Blue Hen. However, the same regulation that defines insured contains an expansive definition of “motor carrier” which “includes, but is not limited to, a motor carrier’s agent” (49 CFR 387.5 [emphasis added]). We cannot say that Conquest, with whom Blue Hen contracted to lease the tractor and provide a driver, and Harris, who was driving the vehicle pursuant to the lease agreement in the course of Blue Hen’s business, were not agents of Blue Hen for purposes of the financial security requirements, or do not otherwise meet this nonexclusive definition of motor carrier. Indeed, the mandated lease provision giving Blue Hen the right to “direct [ ] and control” the driver would weigh heavily in an analysis of whether the driver was an agent of the motor carrier (see e.g., Maurillo v Park Slope U-Haul, 194 AD2d 142, 146 [1993]). Therefore, even if we were to rely on these definitions instead of the policy definition of insured, the fact that plaintiff obtained a judgment against Harris and Conquest rather than Blue Hen would not necessarily lead to a holding that plaintiff was barred from recovery under the MCS-90 endorsement.
Finally, we are unpersuaded that our interpretation of the term “insured” is unworkable in the context of other provisions of the endorsement, including the clause which allows the car *237 rier to seek reimbursement from the insured, in some circumstances, for proceeds paid out under the endorsement. Providence apparently assumes that it could not pursue reimbursement from Harris and Conquest because it did not directly contract with them. This issue is not before us and we therefore do not decide it. We observe only that no obvious impediment appears to preclude the carrier from pursuing indemnification from the negligent parties.
Accordingly, the order of the Appellate Division should be affirmed, with costs. The certified question should not be answered upon the ground that it is unnecessary inasmuch as the Appellate Division order was final.

. Plaintiff commenced a separate action against Blue Hen. According to defendant, the action was dismissed with prejudice; plaintiff indicates only that the action was “discontinued.” In any event, the parties agree that, for reasons not disclosed in the record, the action against Blue Hen is no longer pending.

. Ultimately, the Department determined proof of financial security could consist of the MCS-90 endorsement issued by an insurer, the MCS-82 surety bond issued by a surety or the filing of a written decision, order or authorization of the Federal Motor Carrier Safety Administration authorizing the motor carrier to self-insure, provided the motor carrier maintained a satisfactory safety rating (see 49 CFR 387.7 [d]). However, at the time the MCS-90 endorsement at issue in this case was drafted, self-insurance was not an available option (see 46 Fed Reg 30974, 30983).

. The endorsement further provides: “Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured’s employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. * * * However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement. It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment. The limits of the company’s liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of any one accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident” (49 CFR 387.15).

. Like many regulations, the financial security regulations do not merely mimic the statute; they are more detailed and contain provisions not found in the enabling legislation. For example, in addition to allowing an injured party to recover from the insurer after obtaining a judgment against any party insured under the policy, not just the registered motor carrier, the MCS-90 endorsement also grants the insurance carrier a right to seek reimbursement from the insured for any judgment which would not have been paid but for the endorsement. If Providence believed that the literal language in the endorsement regulation — which does not restrict recovery to instances when an injured party has obtained a judgment against the registered motor carrier — was unduly broad or inconsistent with the enabling statute, it could have challenged the regulation in the appropriate forum. Moreover, the “interests of the insurance industry” were well represented in this original drafting of MCS-90 (see 46 Fed Reg 30974, 30976), so it can hardly be supposed that the industry would fail to voice its objections to the endorsement. The issue not having been raised in this case, this Court is in no position to determine whether federal agencies exceeded their jurisdiction when they promulgated the endorsement. Although the dis *230 sent suggests that this regulation, as interpreted by the federal courts, may be so broad as to exceed the regulatory authority delegated by Congress (dissenting op at 240, 245), that issue is simply not before us.

. The lease also provides that the driver of the tractor-trailer “shall be subject to the direction and control of the lessee,” Blue Hen. This provision, like the agreement to provide liability coverage, is required by law (see 49 CFR 376.12 [c] [1]).

. Providence issued a policy which covered Harris and Conquest. Thus, the insurance carrier is not being held accountable for the risks posed by “unknown third parties” (dissenting op at 242); it is being directed to pay a judgment obtained against parties it agreed to insure. Rather than redefining “[t]he risk for which the insurer issued the policy” (dissenting op at 245), we are applying the policy definition of “insured” drafted by Providence.

. We have relied on the recent decisions in John Deere, Campbell and Adams rather than the federal cases cited by the dissent (dissenting op at 244 n 10) because those cases are factually distinguishable or are otherwise unpersuasive. Most predated the Motor Carrier Act of 1980 and the financial security regulations promulgated thereunder. Only one involved a claim by an injured member of the public (see Wellman v Liberty Mut. Ins. Co., 496 F2d 131, 137 [8th Cir 1974] [court did not interpret the terms of the MCS-90 endorsement or its predecessor]). As the Ohio Supreme Court noted, claims involving an injured party’s right to compensation “implicate the key rationale behind the MCS-90 endorsement, which is the protection of the public” (Lynch v Yob, 95 Ohio St 3d at 447, 768 NE2d at 1164). Disputes between insurance companies (see Carolina Cas. Ins. Co. v Insurance Co. of N. Am., 595 F2d 128 [3d Cir 1979]; National Mut. Ins. Co. of D.C. v Liberty Mut. Ins. Co., 196 F2d 597 [DC Cir], cert denied 344 US 819 [1952]), coverage claims brought by defendants in personal injury actions (Del Real v United States Fire Ins. Crum & Forster, 64 F Supp 2d 958 [ED Cal 1998], affd without op 188 F3d 512 [9th Cir 1999]) or those brought on behalf of employees of the motor carrier (White v Excalibur Ins. Co., 599 F2d 50 [5th Cir], cert denied 444 US 965 [1979] [wrongful death claim by representative of off-duty driver *234 of tractor-trailer killed by negligence of another employee rejected, in part, because decedent was not a member of the public]) are of limited value because they do not require courts to interpret the endorsement in light of the public policy concerns underlying the financial security requirements. In Del Real, the only recent case identified by the dissent, the named insured was not a motor carrier subject to federal financial security requirements. In addition, the Ninth Circuit’s rationale for upholding the denial of a coverage claim by the defendants in the personal injury action is unknown because the case was affirmed without explanation in an unpublished decision (see Del Real v United States Fire Ins. Co., 188 F3d 512).

. Plaintiff’s claim is significantly stronger than that in John Deere because the accident occurred in the course of Blue Hen’s business and was, therefore, precisely the type of risk Providence agreed to cover when it issued the trucker’s liability policy to Blue Hen, its named insured.

. In so holding, we do not impose “absolute liability” on the insurer as the dissent contends (dissenting op at 245). The policy Providence issued to Blue Hen covered Harris and Conquest. In addition, Blue Hen was responsible, under the lease agreement and by federal law, for the negligent conduct attributed to Harris and Conquest as the dissent recognizes (dissenting op at 243). Since we all agree that plaintiff could have obtained a judgment against Blue Hen based solely on the negligence of Harris and Conquest, there is no basis to claim that it is somehow unfair to require Blue Hen’s insurer to pay the judgment against Harris and Conquest.

. Rather than citing judicial authority for this argument, Providence and the dissent (dissenting op at 241-242) rely on an amicus brief filed by the United States Solicitor General on behalf of the United States Department of Transportation in opposition to the insurer’s application for a writ of certiorari in the United States Supreme Court in the John Deere case. In that brief, the Solicitor General took the position that the Ninth Circuit had erred in concluding that an insurance company could be compelled under an MCS-90 endorsement to pay a judgment against someone other than the *235 named insured. The Solicitor General nonetheless opposed a grant of certiorari because he concluded that a judgment would be obtained against someone other than the motor carrier only if the motor carrier loaned its vehicle to another motor carrier who failed to carry the requisite insurance.
The facts of this case fall outside such an assumption and are otherwise distinguishable from John Deere, most notably because Harris and Conquest were insureds under the policy. Due to these distinctions, and the fact that the Department has apparently never stated its views in any other forum (with the exception of the regulatory history we cite), it is unclear what the Solicitor General’s position would be in this case. In John Deere, the Solicitor General noted that no insurer or other entity has ever sought administrative guidance in this regard which may explain the lack of agency documentation addressing the question. Although the Department is in a position to amend the endorsement regulation to substitute the term “named insured” or “registered motor carrier” for the term “insured” for purposes of clarification, despite the decisions of the federal courts on which we rely, it has not done so. For all of these reasons, we credit federal appellate court authority based on the legislative and regulatory history articulated at the time the pertinent regulations were adopted rather than deferring to the views expressed in an amicus brief submitted in another, distinguishable case (see generally, United States v Mead Corp., 533 US 218, 238 n 19 [2001] [Court declined to defer to federal agency position expressed in Solicitor General’s brief]).

. It should be noted that the MCS-90 endorsement contains special definitions of some terms used therein, including accident, motor vehicle, bodily injury and public liability. Several of these definitions were proposed by commenters “representing the interests of the insurance industry” (see 46 Fed Reg 30974, 30976). The term insured, however, is not among them.