**INSURANCE CORPORATION OF NEW YORK, Plaintiff,**

v.

**MONROE BUS CORP. and Monroe Bus Service Inc., Defendants.**

**No.  06 Civ. 3427(DC).**

United States District Court, S.D. New York.

June 14, 2007.

Smith Mazure Director Wilkins Young & Yagerman, P.C. by Joel M. Simon, Esq., New York, NY, for Plaintiff.

Butler & Butler LLP by Michael W. Butler, Esq., Massapequa, NY, for Defendants.

## MEMORANDUM DECISION

CHIN, District Judge.

In this case, plaintiff Insurance Corporation of New York ("InsCorp") seeks reimbursement from its insureds, defendants Monroe Bus Corporation and Monroe Bus Service, Incorporated (together, "Monroe"), for amounts paid by InsCorp on a judgment entered against Monroe in an underlying state court action. Before the Court are Monroe's motion for summary judgment and InsCorp's motion for partial summary judgment. For the reasons set forth below, both motions are denied.

## BACKGROUND

### A. Facts

Except as stated below, the principal facts are not in dispute and may be summarized as follows:

#### 1. The Underlying State Action

On or about June 21, 2002, Gabor Simon Hirsch was allegedly injured on a bus owned and operated by Monroe. (Compl.¶ 9).[1] In 2003, Hirsch sued Monroe in the Supreme Court of New York,

---

1. I cite to the Complaint only where the allegations are undisputed.

Kings County, in a case entitled *Hirsch v. Monroe Bus Corp. & Monroe Bus Serv., Inc.*, Index No. 12356/03. (*See* Compl. ¶ 9). Monroe failed to answer or otherwise appear and a default judgment was entered against it for $493,611. Monroe moved to vacate the default, but the trial court denied the motion on December 10, 2003. On appeal, the Second Department affirmed, concluding that Monroe had failed to offer a "reasonable excuse" for its default. *See Hirsch v. Monroe Bus Corp.*, 13 A.D.3d 486, 786 N.Y.S.2d 311 (2d Dep't 2004). (*See also* Butler 11/2/06 Affirm. at 2).

### 2. *The Policy*

InsCorp issued a commercial auto insurance policy (the "Policy") to Monroe for the period from November 28, 2001 through November 28, 2002. (Compl.¶ 8). The Policy provided in part:

> We have no duty to provide coverage under this [P]olicy unless there has been full compliance with the following duties:
>
> a. In the event of "accident," claim, "suit" or "loss," you must give us or our authorized representative prompt notice of the "accident" or "loss." . . .
> b. Additionally, you and any other involved "insured" must: . . .
>
> > [i]mmediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit." . . .

(Policy, Form CA 00 01 07 97, at 7).

The Policy also contained an endorsement, form MCS–90B (the "Endorsement"), which was required by federal law. (Simon 10/24/06 Aff. ¶ 8 & Ex. D). The Endorsement is entitled:

ENDORSEMENT FOR MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY UNDER SECTION 18 OF THE BUS REGULATORY REFORM ACT OF 1982.

The Endorsement provided that the Policy was amended to comply with federal law:

> The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a for-hire motor carrier of passengers with Section 18 of the Bus Regulatory Reform Act of 1982 and rules and regulations of the Federal Highway Administration (FHWA) and the Interstate Commerce Commission.

(Endorsement at 1).[2] The Endorsement also provided that the insurance company was liable for the payment of any final judgment against the insured "for public liability resulting from negligence in the operation, maintenance or use of motor vehicles" subject to the financial requirements of the Bus Regulatory Reform Act of 1982. (*Id.*).

The Endorsement further provided that:

> no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which this endorsement is attached shall remain in

2. The Interstate Commerce Commission ("ICC") has been abolished and its authority to regulate carriers has been transferred to the Department of Transportation ("DOT").

*See, e.g., Lincoln Gen. Ins. Co. v. Autobuses Tierra Caliente, Inc.*, No. 04 Civ. 1535, 2005 WL 2219241, at *3 (N.D.Tex. Sept. 13, 2005).

full force and effect as binding between the insured and the company.

(Endorsement at 1).

Finally, the Endorsement provided that:

The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

(Endorsement at 1).

### 3. *InsCorp's Involvement in the Hirsch Action*

InsCorp purportedly did not receive notice of the *Hirsch* action until on or about September 3, 2003, after Monroe had already been held in default. (Compl. ¶ 10; *see* Butler 11/2/06 Affirm. at 2). In accordance with its obligations under the Endorsement, InsCorp paid Hirsch $493,611.00 on the default judgment. (Compl.¶ 14). InsCorp alleges that it also expended $34,688.58 in costs and fees in defense of the *Hirsch* action. (Simon 10/24/06 Aff. ¶ 10).

By its counsel's letter dated May 2, 2005, InsCorp advised Monroe that it would be seeking reimbursement for funds paid and costs incurred in connection with the *Hirsch* case. (Def. Not. of Mot., Ex. 2).[3] The letter stated that although the date of loss was June 21, 2002, InsCorp was not given notice of the loss until September 2, 2003, after the matter was already in default. (*Id.*). The letter further stated that, absent the Endorsement, no coverage would have been provided because of Monroe's failure to provide notice of the loss itself or the lawsuit. (*Id.*).

### B. *Prior Proceedings*

InsCorp commenced this action on May 4, 2006, seeking a declaration that (1) Monroe was not entitled to coverage under the Policy for the *Hirsch* matter and (2) Monroe was obligated to reimburse InsCorp for the amounts expended in connection with *Hirsch*. (Compl. at 7–8). Subject matter jurisdiction is alleged to exist under the Declaratory Judgment Act, 28 U.S.C. § 2201, and also because the case purportedly "arises under" federal law, section 18 of the Bus Regulatory Reform Act of 1982, 49 U.S.C. § 31138. *See* 28 U.S.C. § 1331. (Compl.¶¶ 4, 5). The parties are not diverse, as InsCorp and Monroe are New York entities. (*See* Compl. ¶¶ 2, 3).

These motions followed.

### *DISCUSSION*

In seeking relief, InsCorp makes a three-part argument: (1) it was obligated to pay the *Hirsch* judgment by virtue of the Endorsement, (2) it would not otherwise have been obligated to pay the judgment because Monroe had failed to provide timely notice of the loss, claim, or suit as required by the Policy, and (3) it therefore is entitled to reimbursement from Monroe under the reimbursement provision of the Endorsement. (Pl. Mem. at 1–6).

Monroe does not seriously contest InsCorp's first assertion, reserves its right to later dispute the second assertion, and denies that it is obligated to reimburse InsCorp. Monroe contends principally that the Endorsement did not relieve InsCorp of its duty, pursuant to New York Insurance Law § 3420(d) ("Section 3420(d) or § 3420(d)"), to disclaim insurance coverage "as soon as is reasonably possible," and it

---

**3.** Defendants attach two exhibits to their notice of motion. The exhibits have not been marked or tabbed, but the May 2, 2005 letter is the second exhibit.

contends further that InsCorp failed to comply with that duty because it waited some twenty months to disclaim coverage. (Defs. Mem. at 6–7).

Monroe seeks summary judgment dismissing the complaint on the ground that the Endorsement does not relieve InsCorp of its duty to timely disclaim coverage as required by § 3420(d). InsCorp seeks partial summary judgment on its contention that § 3420(d) is inapplicable to this case and that therefore it has not waived its right to seek reimbursement under the Endorsement. I discuss the issue of subject matter jurisdiction first before turning to the merits.

### A. *Subject Matter Jurisdiction*

Although the parties do not dispute the existence of subject matter jurisdiction, I consider the issue *sua sponte* to insure that I have the power to adjudicate this dispute.[4] *See Travelers Ins. Co. v. Carpenter*, 411 F.3d 323, 328 (2d Cir.2005).

■ InsCorp alleges subject matter jurisdiction based on two grounds: the Declaratory Judgment Act and the existence of a federal question under the Bus Regulatory Reform Act. InsCorp's reliance on the Declaratory Judgment Act is misplaced, for it is well-settled that the Declaratory Judgment Act is not itself an independent basis for subject matter jurisdiction. *See Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752 (2d Cir.1996). I agree, however, that InsCorp has shown the existence of a federal question under the Bus Regulatory Reform Act and the regulations promulgated thereunder.

### 1. *Applicable Law*

■ Federal courts have jurisdiction over actions "arising under the Constitu-

tion, laws, or treaties of the United States." 28 U.S.C. § 1331. As the Supreme Court recently reiterated, "a case 'aris[es] under' federal law within the meaning of § 1331 … if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.' " *Empire Healthchoice Assur., Inc. v. McVeigh*, —— U.S. ——, ——, 126 S.Ct. 2121, 2131, 165 L.Ed.2d 131 (2006) (citation omitted).

While the "vast majority" of cases involving federal question jurisdiction are cases where "federal law creates the cause of action," jurisdiction may also exist where the resolution of a state claim necessarily turns on the construction of federal law. *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808, 813–14, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (citations omitted). The "mere presence" of a federal issue does not, however, create federal question jurisdiction over a state cause of action. *Id.* at 813, 106 S.Ct. 3229. Where state law creates the cause of action, the Court must ask "whether that cause of action poses a substantial federal question." *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 99 (2d Cir.2001) (citation omitted).

Federal question jurisdiction has also been found where a plaintiff "sued to vindicate contractual rights set forth by federal statutes, despite the fact that the relevant statutes lacked express provisions creating federal causes of action." *Jackson Transit Auth. v. Local Div. 1285, Amalgamated Transit Union, AFL–CIO–CLC*, 457 U.S. 15, 22, 102 S.Ct. 2202, 72 L.Ed.2d 639 (1982). There, the Supreme Court held:

---

**4.** Paragraph 5 of the complaint alleges federal question jurisdiction and paragraph 5 of the answer admits the allegations of paragraph 5 of the complaint.

[S]uits to enforce contracts contemplated by federal statutes may set forth federal claims and ... private parties in appropriate cases may sue in federal court to enforce contractual rights created by federal statute.

*Id.* The key, according to the Court, is whether Congress intended that the contracts in question be " 'creations of federal law,' " and that the "rights and duties contained in those contracts be federal in nature." *Id.* at 23, 102 S.Ct. 2202 (quoting *Machinists v. Central Airlines, Inc.,* 372 U.S. 682, 692, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963)).

In *Jackson Transit,* a local government applied for federal aid to acquire a failing private bus company. To qualify for the funding, the local government was required by federal law to enter into an agreement with the transit workers' union that preserved the workers' pre-existing collective bargaining rights. Alleging violations of the agreement, the union brought suit in federal court.

The Court declined to find federal question jurisdiction, concluding that "Congress made it absolutely clear that it did not intend to create a body of federal law applicable to labor relations between local governmental entities and transit workers." *Id.* at 27, 102 S.Ct. 2202. It recognized, however, that certain contracts can give rise to federal question jurisdiction, even in the absence of express statutory language creating federal causes of action, and cited some examples. *See id.* at 22, 102 S.Ct. 2202 (citing, *inter alia, Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) (permitting federal suit for rescission of contract declared void by Invest-

ment Advisers Act, 15 U.S.C. § 80b–1, even though statute did not expressly provide for private suits); *Norfolk & W. Ry. Co. v. Nemitz,* 404 U.S. 37, 92 S.Ct. 185, 30 L.Ed.2d 198 (1971) (holding railroad employees could assert federal claims to enforce assurances made by railroad to secure ICC's approval of consolidation under Interstate Commerce Act, 49 U.S.C. § 5(2)(f)); *Int'l Ass'n of Machinists, AFL–CIO v. Central Airlines, Inc.,* 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963) (holding union had federal cause of action to enforce award of airline adjustment board included in collective bargaining contract pursuant to Railway Labor Act, 45 U.S.C. § 184)).

### 2. *Application*

Here, there is arguably some dispute as to whether InsCorp's claims are federal or state causes of action. Insurance coverage claims usually are breach of contract claims governed by state law, and the federal statute in question, the Bus Regulatory Reform Act, does not explicitly provide for a private cause of action by an insurer against an insured. *See Millers Nat. Ins. Co. v. Axel's Exp., Inc.,* 851 F.2d 267, 270 (9th Cir.1988); *see also* 49 U.S.C. § 31138.[5] Nonetheless, I conclude that federal question jurisdiction exists over InsCorp's claims in this case.

The contractual rights that InsCorp seeks to vindicate clearly are "creations of federal law." Section 18 of the Bus Regulatory Reform Act provides that "[t]he Secretary of Transportation shall prescribe regulations to require minimum levels of financial responsibility" for certain commercial motor vehicle carriers of

---

5. The statute permits the Secretary of Transportation to impose fines for violations, and permits the Attorney General to bring civil actions in the United States district courts to collect the fines, but it is silent as to the availability of a private cause of action. 49 U.S.C. § 31138(d).

passengers. 49 U.S.C. § 31138(a). Federal transportation regulations have been promulgated prescribing the "minimum levels of financial responsibility," and the standards may be met by an insurance policy containing an endorsement—Form MCS–90B. *See* 49 C.F.R. §§ 387.31(a), (d)(1), 387.33. The endorsement "must be in the form prescribed by" the Federal Motor Carrier Safety Administration (the "FMCSA") of the DOT, and a sample form—Form MCS–90B—is set out in the regulations themselves. *Id.* § 387.39 & Illus. I. InsCorp's complaint specifically seeks enforcement of rights under the federally-mandated Form MCS–90B. (*See* Compl. ¶¶ 1, 12–16, 19, 25).

The contract, then, on which InsCorp relies is not only authorized by federal law—it is required by federal law. Its terms are prescribed precisely by the federal transportation regulations. The form of the Endorsement—Form MCS–90B—is the only form permitted by federal law. *See* 49 C.F.R. § 387.39 ("Endorsements for policies of insurance (Illustration I) ... *must* be in the form prescribed by the FMCSA." (emphasis added)). Hence, federal law-and the Policy Endorsement created and prescribed by federal law—required InsCorp to pay the *Hirsch* judgment, even assuming InsCorp otherwise was excused under the Policy from covering the claim. Absent this federally-required endorsement, InsCorp would not have been obliged to pay the judgment if indeed Monroe did not give timely notice of the claim as required by the Policy. Moreover, InsCorp's claim for reimbursement is based not on state law but on a provision of the federally-required Endorsement—"The insured agrees to reimburse the company ... for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement." (Endorsement at 1).

The federal connection here between InsCorp's causes of action and federal law is significantly more substantial than the connections in *Merrell, Jackson Transit,* and *Empire.*

*Merrell* involved products liability tort claims brought in state court for damages for personal injuries. The defendants removed the case to federal court on the ground that federal law was implicated because the drugs in question were misbranded in violation of federal law. 478 U.S. at 805–06, 106 S.Ct. 3229. These were still quintessentially state law claims, creatures of not federal but state law.

*Jackson Transit,* as noted, involved traditional collective bargaining agreements that originated as agreements between privately-owned transportation companies and unions, which had to be preserved if local governments wanted to use federal funds to acquire the companies. 457 U.S. at 16, 102 S.Ct. 2202. Congress clearly did not intend for federal law to apply to these agreements between local governmental agencies and their employees.

*Empire* involved claims brought by an insurance carrier against the estate of a health insurance plan participant (the "decedent") for reimbursement of amounts paid by the carrier for the decedent's medical care when the decedent's estate recovered monies from an unrelated tortfeasor. The plan was authorized by federal law, the Federal Employees Health Benefits Act of 1959, 5 U.S.C. § 8901 *et seq.,* but none of the rights in question were created by federal law. 126 S.Ct. at 2129–30.

In contrast, here, the principal rights and obligations were created by federal law. The contractual provisions in question—contained in the Endorsement—were not just authorized by federal law but

were created and *required* by federal law. The form itself is prescribed by federal law, and it is the only form—the only policy endorsement—that the federal regulations permit with respect to this insurance.

There is little in the statute or legislative history explicitly addressing Congress's intentions in this respect.[6] But in view of the above, clearly the rights are federally—created. The scenario presented—an insurance company seeking reimbursement for a payment required *only* because of a federally-required endorsement, where the endorsement specifically provides for reimbursement—is not a scenario that even exists under state law. Hence, the reimbursement claim in question is based on federally-created rights.

The case law addressing the issue of federal question jurisdiction to hear an insurance coverage dispute involving a federally-mandated endorsement is sparse. In a suit brought by the estate of an individual killed by a trailer truck against the insurer of the truck companies, where the policy contained a federally-mandated endorsement, Judge Mukasey held that the court had federal question jurisdiction "because plaintiff's claim is premised upon federal statutes and regulations." *Green v. Royal Indem. Co.*, No. 93 Civ. 4335(MBM), 1994 WL 267749, at *1 n. 1 (S.D.N.Y. June 15, 1994). Jurisdiction also existed, however, by virtue of diversity of citizenship of the parties. *Id.* But *Green* is not precisely on point because the dispute was between the estate of the injured party and the insurer, and not, as here, between the insurer and the insured. In two other cases in federal court involving coverage disputes between the insurer and the insured arising from a federally-mandated endorsement, the merits were reached without any question being raised as to subject matter jurisdiction. *See T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc.*, 242 F.3d 667 (5th Cir.2001) (coverage dispute where insurer sought reimbursement from its insured, trucking company covered by Motor Carrier Act of 1980, where policy included federally-mandated endorsement requiring insurance); *Canal Ins. Co. v. First Gen. Ins. Co.*, 889 F.2d at 604 (coverage dispute between two insurance companies arising from tractor-trailer highway accident, where one policy contained federally-mandated endorsement requiring insurance).[7]

In *Millers*, however, the Tenth Circuit affirmed the dismissal of an action for lack of federal question jurisdiction where the insurer of an equipment owner damaged in a truck accident sued the insurer of a common carrier for indemnification. The truck was regulated under 49 U.S.C. § 10101 *et seq.*, and thus was required to maintain an insurance policy or other type of security in compliance with applicable federal transportation regulations. 851 F.2d at 269 (citing 49 U.S.C. § 10927(a)(1) (1988)). The plaintiff argued that the dis-

---

**6.** The legislative history deals almost entirely with the need to safeguard injured parties from insurance companies disclaiming coverage. *See Canal Ins. Co. v. Carolina Cas. Ins. Co.*, 59 F.3d 281, 283 (1st Cir.1995) ("[W]e consider the ... endorsement to be, in effect, suretyship by the insurance carrier to protect the public—a safety net. ... [I]t simply covers the public when other coverage is lacking."); *see also Canal Ins. Co. v. First Gen. Ins. Co.*, 889 F.2d 604, 611 (5th Cir.1989) (holding that policy embodied in ICC regulations was to

assure that injured members of public would be able to obtain judgments collectible against negligent authorized carriers).

**7.** Neither *T.H.E.* nor *Canal* states the basis for federal jurisdiction, but no mention is made in either decision of the citizenship of the parties and both cases discuss the federal transportation regulations. *See* 242 F.3d at 670–72, 889 F.2d at 606–07, 610–11.

pute "arose under" federal law because the determination of insurance coverage followed directly from the underlying determination of liability, which was governed by federal law. The Tenth Circuit noted that the claim for indemnity was a state law claim, and "[t]hough its resolution may involve a determination of federal law, that alone is not sufficient to invoke federal-question jurisdiction." *Id.* (citing *Merrell*). It further held:

> The proper inquiry is whether the federal statute involved in Millers' state claim provides a private right of action. Millers' claim is predicated upon federal law governing interstate carriers.... 'Congress and the ICC, through authorizing statute and regulations, intended to impose financial responsibility requirements upon authorized carriers to protect the public.' But though the regulations require the carriers to hold insurance to assure financial responsibility toward members of the public, there is nothing in the regulations or the statute that deals with the question of allocating liability between the insurers of an owner and a carrier.

*Id.* at 270 (quoting *Planet Ins. Co. v. Transp. Indem.,* 823 F.2d 285, 286–87 (9th Cir.1987)).

*Millers* is distinguishable. It involved the question of allocating liability between two insurance companies and thus was at least one step removed from the federal connection that exists in this case. The rights and liabilities of the two insurers were not governed by a federally-created endorsement or contract, and there is nothing in the decision to suggest that the language of a federally-created endorsement or contract was at issue. Rather, the plaintiff's claim was based solely on its rights under state law.

In short, I hold that this Court has subject matter jurisdiction over this action.

## B. *The Merits*

### 1. *The Dispute*

Under the Policy, InsCorp had "no duty to provide coverage" unless there was "full compliance" by Monroe with its obligations to give InsCorp "prompt notice" of any loss or accident and to immediately send copies to InsCorp of any demand, summons, or other legal paper concerning any claim or suit. (Policy, Form CA 00 01 07 97, at 7). InsCorp alleges that Monroe failed to do so with respect to the *Hirsch* matter; Monroe denies the assertion that it did not give InsCorp any notice of the accident or claim until after it was in default. Even assuming Monroe failed to give proper notice, InsCorp was nonetheless required under the Endorsement to pay the *Hirsch* judgment and it did so. InsCorp now seeks reimbursement from Monroe under the provision of the Endorsement that provides that "[t]he insured agrees to reimburse the company ... for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement." (Endorsement at 1).

Monroe argues that the Endorsement also provides that "all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company." (*Id.*). Monroe further contends that under New York Insurance Law § 3420(d) InsCorp was required to give notice of its intent to disclaim coverage under the Policy as soon as was "reasonably possible," and that InsCorp failed to meet that obligation because it waited until May 2, 2005 to give notice of its decision to disclaim.

Section 3420(d) provides:

If under a liability policy ... an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident ..., it shall give written notice *as soon as is reasonably possible* of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

N.Y. Ins. Law § 3420(d) (McKinney Supp. 2005) (emphasis added). The Policy does not include a provision that requires InsCorp to give notice to Monroe of any disclaimer of liability or denial of coverage. (*See* Simon 10/24/06 Aff. Ex. C; Simon 11/21/06 Aff. ¶ 3).

### 2. *Preemption*

The threshold question is whether § 3420(d) is preempted by federal law, as InsCorp argues. (Pl. Mem. at 5–6). InsCorp contends that the federal legislation is "comprehensive" and provides that the insurer has the right to seek reimbursement from the insured, and thus, InsCorp alleges, any state law restricting that right of reimbursement is preempted by federal law.

■ InsCorp's preemption argument is rejected. Preemption occurs when it is " 'impossible for a private party to comply with both state and federal requirements, ... or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Ass'n of Int'l Auto. Mfrs., Inc. v. Abrams,* 84 F.3d 602, 607 (2d Cir.1996) (quoting *Freightliner Corp. v. Myrick,* 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995)). Three types of preemption exist: (1) express preemption, where Congress has expressly preempted state law; (2) field preemption, where Congress has established a comprehensive regulatory scheme intended to occupy a given field; and (3) conflict preemption, where it is impossible for a party to comply with both state and federal law or the state law is an obstacle to the achievement of federal objectives. *See English v. Gen. Elec. Co.,* 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990).

■ Congressional intent is vital in determining whether a federal statutory provision preempts a corresponding state law. "Congress' intent, of course, primarily is discerned from the language of the preemption statute and the statutory framework surrounding it." *Green Mountain R.R. Corp. v. Vermont,* 404 F.3d 638, 641 (2d Cir.2005) (quoting *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485–86, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)). With respect to insurance, the Supreme Court has held that "[s]tate law governing insurance generally is not displaced, but 'where [that] law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress,' federal preemption occurs." *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank,* 510 U.S. 86, 99, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993) (quoting *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984)).

■ Here, federal law does not expressly preempt state law; the relationship between federal and state law is not mentioned in the Endorsement or in the regulations, statute, or legislative history. *See, e.g.,* Sen. Rep. No. 97–411, at 29–30 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2308, 2336–37. Nor does federal law preempt the field of insurance law, and the right of reimbursement as between insurers and insured parties is usually a matter governed by state law. The purpose of the federal legislation—to ensure that members of the public injured by the negligence of common carriers are able to obtain collectible judgments—would not be undermined by the application of state

law to the relationship between insurers and insureds. Finally, as discussed below, it would not be impossible for a party to comply with both state and federal law, and state law is not an obstacle to the achievement of federal objectives. *See English,* 496 U.S. at 79, 110 S.Ct. 2270; *see also T.H.E.,* 242 F.3d at 672–73 (in suit by insurer against insured trucking company for reimbursement under federally-mandated endorsement, rejecting insurer's preemption argument that only federal law was applicable in evaluating its rights under endorsement, and court looked to state law as well)[8]; *Redland Ins. Co. v. Shelter Mut. Ins. Co.,* 193 F.3d 1021, 1022 (8th Cir.1999) ("[W]e believe the regulations' silence on the issue [of liability as between insured and the insurance company] does not require preemption of state-law doctrines that do resolve such questions.").

Although the Endorsement gives InsCorp the right of reimbursement, that right is triggered only if there is no coverage under the Policy and InsCorp is obligated to pay the insured only because of the obligations imposed by the Endorsement. Whether Monroe complied with the notice requirements of the Policy is a matter of state law. *See T.H.E.,* 242 F.3d at 673–74. Moreover, the Endorsement provides that "all terms, conditions, and limitations in the [P]olicy … shall remain in full force and effect as binding between the insured and the company." (Endorsement at 1). *See Pierre v. Providence Washington Ins. Co.,* 99 N.Y.2d 222, 235, 754 N.Y.S.2d 179, 784 N.E.2d 52 (2002) ("[B]y its literal language, the [MCS–90] endorsement simply does not provide separate coverage. Like most endorsements to insurance policies, it explicitly cross-refer-

ences and incorporates several of the terms of the policy."). There is nothing in the Endorsement, regulations, or statute to suggest that state law—to the extent it is not inconsistent with federal law—shall not apply to issues of coverage arising from the rest of the Policy or to coverage issues not governed by federal law. *Compare Green,* 1994 WL 267749, at *5 ("the MCS–90 endorsement … is interpreted under federal, not state, law"); *Pierre,* 99 N.Y.2d at 231, 754 N.Y.S.2d 179, 784 N.E.2d 52 ("The MCS–90 endorsement, a creature of federal regulation, must be interpreted according to federal law.").

Hence, I hold that state law is not preempted and that both federal law and state law apply, to the extent they do not conflict.

### 3. *The Applicability of Section 3420(d)*

█ Even assuming § 3420(d) is not preempted, questions remain as to its applicability.

First, by its terms, § 3420(d) applies when an insurer "disclaim[s] liability or den[ies] coverage." Here, InsCorp contends that it did not disclaim or deny coverage. Indeed, InsCorp notes, the Endorsement barred it from disclaiming or denying coverage to the injured party, and InsCorp paid the judgment to Hirsch. Rather, InsCorp contends, it is merely seeking reimbursement.

While I agree with InsCorp to an extent, in the end, however, InsCorp is still seeking to disclaim or deny coverage, albeit in the context of seeking reimbursement. In other words, InsCorp is entitled to reim-

---

**8.** *Larsen* and some of the other cases cited involved a form MCS–90 rather than, as here, form MCS–90B. There are no substantive differences between the two, as they contain identical language, except where they refer to their respective enabling statutes, the Motor Carrier Act of 1980 and the Bus Regulatory Reform Act of 1982.

bursement only if Monroe is not entitled to coverage under the Policy.

I do not decide this issue now. I believe there is some arguable ambiguity in the language of § 3420(d), as it makes no reference to the obligation of an insurer to give notice of its intent to seek reimbursement. Section 3420(d) was enacted to protect insureds and injured parties from prejudice resulting from delay in learning the insurance company's position as to coverage, *see, e.g., AIU Ins. Co. v. Investors Ins. Co.,* 17 A.D.3d 259, 793 N.Y.S.2d 412 (1st Dep't 2005),[9] and it is unclear whether § 3420(d) was intended to cover a situation such as that presented here, where the insurer could not disclaim as to the injured party and the insured apparently delayed in giving notice until after a default judgment was entered. Moreover, there appears to be no case law on the applicability of § 3420(d) to claims for reimbursement under a federally-mandated endorsement such as the MCS–90B or the MCS–90.

Second, Monroe disputes InsCorp's assertion that it did not give timely notice of the accident or claim. Although it does not appear likely that Monroe gave timely notice—to date it has not pointed to any such notice—at this stage of the litigation, when the parties have not completed discovery, it would be premature to rule as a matter of law that Monroe did not give timely notice. The record does not contain any evidence as to what notice Monroe purportedly gave. Apparently, some form of notice was given on or about September 2, 2003, but the record does not indicate what that notice was or how it was given.

Third, even assuming that § 3420(d) does apply, InsCorp may very well be able to argue that its obligation to give reason-

ably prompt notice of its intent to seek reimbursement was never triggered because of Monroe's failure to provide notice of the claim or suit. As the New York State Court of Appeals has recognized, where a policy requires notice of an accident or suit, "[t]he insurer's receipt of such notice is . . . a condition precedent to its liability under the policy." *American Transit Ins. Co. v. Sartor,* 3 N.Y.3d 71, 781 N.Y.S.2d 630, 632–33, 814 N.E.2d 1189 (2004); *see also Webster v. Mount Vernon Fire Ins. Co.,* 368 F.3d 209, 214 (2d Cir. 2004) ("Because an insurer's obligation to disclaim coverage as to a particular insured does not arise until that insured has provided notice of the occurrence or claim, [the insured's] failure to provide any notice relieved [the insurer] of its obligation to disclaim coverage as to [that insured]."). Cases also hold, however, that an insurer is obligated under § 3420(d) to give reasonably prompt notice of disclaimer "even if the insured has, in the first instance, failed to provide the insurer with timely notice of the claim," where the insured eventually gave notice, albeit late notice, of the claim. *79th Realty Co. v. Wausau Ins. Cos.,* 7 A.D.3d 507, 776 N.Y.S.2d 96, 97 (2d Dep't 2004). Here, where the notice of claim and suit apparently were not given until after a default judgment was entered, the notice was so late that arguably it was tantamount to no notice.

Fourth, even assuming that § 3420(d) does apply, questions of fact exist as to whether InsCorp "g[a]ve written notice as soon as [was] reasonably possible" to Monroe that it was seeking reimbursement because Monroe had failed to give timely notice. I reject Monroe's argument that InsCorp's delay here was unreasonable as

---

**9.** *But see Allstate Ins. Co. v. Gross,* 27 N.Y.2d 263, 317 N.Y.S.2d 309, 313–14, 265 N.E.2d 736 (1970) (construing predecessor to § 3420(d) and holding that while a showing of prejudice to insured or injured party was not required, the defense of lack of prejudice is also "not precluded").

**442**

a matter of law. InsCorp in fact covered the loss—it paid the judgment. Moreover, the circumstances here were highly unusual because InsCorp was not permitted to disclaim. The record contains little as to the circumstances leading up to the issuance by InsCorp of its letter of May 2, 2005, and hence I cannot decide this issue now.

### CONCLUSION

For the foregoing reasons, Monroe's motion for summary judgment and InsCorp's motion for partial summary judgment are both denied, except I hold that New York law is not preempted to the extent it is not inconsistent with federal law. The parties shall appear for a pre-trial conference on June 27, 2006 at 12:00 p.m.

SO ORDERED.